Good morning, Your Honors. Lori Walsh for Petitioners Marieli Cestari-Cuenca and Oscar Flores-Camacaro. I'd like to reserve two minutes for rebuttal. Petitioner's case illustrates this Court's general comment about cases involving ineffective assistance. The good news is that the petitioner had a lawyer. The bad news is that the petitioner had a lawyer. Here, petitioners sought asylum but were victims of not one but two lawyers who defrauded them and were disbarred. I'd like to discuss the following three issues. First, contrary to the government's contention, petitioners exhausted the issue that extraordinary circumstances excused their failure to file for asylum within the one-year deadline. Second, the Board erred in finding that no extraordinary circumstances existed in this case. And third, the Board erred in concluding with the immigration judge that Ms. Cestari did not suffer past persecution. Moreover, the Board erred when it failed to consider petitioners' fear of future harm, both with respect to asylum and withholding. You know, it was a little hard to follow all of the procedural ins and outs. There was a lot of different things happening. But as I understood the government's argument, with respect to the issue of what happened after your client filed Tomaszewski, Tomaszewski, and then, which was in February of 2002, and then she hired Mr. Salazar, who filed labor papers but not an asylum application. And then nothing happened, I guess, with respect to the labor certification went forward. No asylum application was filed. And it was with respect to that interim period of whatever it was, 16 months or whatever, that there wasn't any specific argument made to the BIA that Mr. Salazar had been ineffective for failure to file asylum applications. So we don't know whether she asked him to or what the dialogue was. That was never developed before the BIA. Tell me how you rebut the government's argument on that, that that period at least was not, or that issue was not exhausted. Your Honor, in testimony before the immigration judge, Ms. Sestari talked about hiring Ms. Tomaszewski within the one-year deadline, and she was advised to file a labor certification instead. Then Ms. Tomaszewski apparently did not file the labor certification, didn't tell petitioners she'd been disbarred. When Ms. Sestari discovered she'd been tricked by Ms. Tomaszewski in February 2002, when Mr. Flores was still in status, she hired Mr. Salazar, and then he advised her again to file a labor certification, did not allege ineffective assistance with respect to Ms. Tomaszewski, and then waited another 17 months to file the asylum applications. After the labor certification was approved in 2006, Mr. Salazar failed to file the I-140 on that labor certification within the 180-day period, so forfeited petitioners' ability to adjust based on an approved labor application. So we know there was an argument that his failure to appeal to us was ineffective assistance of counsel, but as I understand what the government is saying, the failure to file an asylum certification after she discovered that Tomaszewski had not done so, was that issue raised to the BIA? The immigration judge's decision incorporates Mr. Salazar's 17-month delay in filing. He said even assuming she was misinformed by the first individual, this is at 312, even assuming she was misinformed by the first individual she spoke to, I find that it would have been reasonable to have expected her to have sought out other advice, and he talked about the 17-month delay, and then the board concurred with the immigration judge in the 2005 decision incorporating this 17-month delay in addition to Ms. Tomaszewski's ineffective assistance. As I read that, though, it seemed like he was addressing she wasn't diligent enough, so therefore it doesn't excuse an extraordinary circumstance, as opposed to addressing an argument, well, it's another example of extraordinary circumstances, because he was ineffective. Was that argument made in any, or at least the government says that argument was not made, so it's not exhausted, and that's what I'm concerned about. In testimony, Ms. Zastari said that she, there was an exchange with the immigration judge. She says, when did you find out that Ms. Tomaszewski had tricked you, and she says in February 2002 when I talked to my current lawyer, and then the immigration judge says, and you still didn't file for asylum until July 2003, and Ms. Zastari says, I didn't know that I still had time in which to file for asylum. So clearly the issues raised in testimony that she, you know, was not informed by Mr. Salazar that there, either that there was, I mean, it's somewhat ambiguous. It could mean that she didn't know she was able to file two parallel forms of relief. It might mean that she wasn't aware of the deadline. But in any case, there was this 17-month delay that's raised. So your position is that we should infer or that we can infer that the IJ was aware that your client believed that there was ineffective assistance? Is that your position? We also raised the issue in our brief to the board to reopen the case. I realize this is in an exceptional circumstances context. But, you know, the issue was raised that Mr. Salazar failed to appeal the timely, to file a timely petition for review to this court, the 2000, January 2005 BIA decision. And one of the essential arguments would have been was extraordinary, you know, was the extraordinary circumstances exception met? So, I mean, ineffective assistance was raised with respect to Mr. Salazar, with respect to Ms. Tomaszewski, and the issue of extraordinary circumstances, excusing the one-year, you know, creating an exception to the one-year filing deadline, was absolutely raised below. And this court's held that when the BIA addresses an issue, it's deemed exhausted. Now, the BIA did withdraw its opinion and refile, so that would give an opportunity to her to timely appeal to this court, which happened. What arguments were made to the BIA that caused them to withdraw their opinion and reenter it? The board reissued its decision in response to our motion to reopen that was based on Salazar's failure to file a timely petition for review. With us? Basically, yes, forfeiting petitioner's ability to appeal the asylum claim on the merits. And then also, Mr. Salazar failed to file. The prejudice was created because they were unable to adjust on the I-140 petition because they had a final order of removal. Could you clarify, who was Mr. Adoy Ojeda? Mr. Ojeda was an associate in Mr. Salazar's office. He handled the immigration. He was there on behalf of Salazar, or was he Salazar's associate? Yes, he was. And I think the decision in which they reopened the case mentions that Mr. Ojeda was an inexperienced associate at the time. That's it. That's three. Would you like to save a minute for rebuttal? I would. I'm sorry, Your Honor. Thank you. Good morning again, Your Honors. May it please the Court, Michael Heiss on behalf of the Respondent, the Attorney General of the United States. Exhaustion is fundamental to immigration review, and the agency must have the first opportunity to address the types of arguments petitioners are raising. Petitioner's ineffective assistance of counsel claims is apparently a moving target. As Your Honor was pointing out or asking, has this question of whether Salazar was ineffective for that period between February 2002 and July 2003, has the Board ever touched that? Has the immigration judge addressed that actual claim as to Attorney Salazar? It plainly has not. The agency simply has not been presented with that question. Petitioner's counsel claims. Well, certainly belatedly it was, and they then reopened and reentered their decision because of Salazar's incompetence. Correct, Your Honor. As you asked, what arguments were raised to the Board that caused them to reissue its decision? On the certified administrative record, page 83, it's precisely what petitioner's counsel responded, that they were prejudiced by the failure to file a petition for review. That's a separate and independent ground of ineffective assistance. In Carragher v. Lewis, this Court responded to a situation where an appellant raised one ground of ineffective assistance in a state appeal, but then raised nine grounds of ineffective assistance before this Court on appeal and said that those weren't exhausted because it's a separate inquiry. There's separate facts that go to those and different kinds of prejudice that are associated with that. All that's before this Court right now is the Board's decision that is reissued, but only that procedure, only the immigration judge's decision and only the Board's 2004 decision. Let me ask you, if Mr. Ojeda was there standing in for Mr. Salazar, why would he point his finger at Mr. Salazar and say, Mr. Salazar was incompetent? That's an excellent question. Why would he do that? Again, that would be something for the agency to have to make sense of as well. I can't make sense of it personally. So what are they supposed to do? Does the petitioner have to file a motion to reopen in that circumstance? Have to file a motion. In this situation. To raise ineffective assistance of counsel? Yes, unless. Where's the rule for that? The rule. Is that in a regulation or is that a? The rule is exhaustion. Well, you said that somebody has to file a motion to reopen to raise ineffective assistance of counsel when in this kind of circumstance. Again, this is something for the agency to sort out in the first instance. This court certainly reaches ineffective assistance of counsel claims, especially, say, in a situation where there was a different attorney that represented the alien as before the IJ and the board, like there's one before the IJ and one before the board, and then there's perhaps another one before this court. And this presents the unusual situation as well where either Mr. Ojeda or Mr. Salazar would essentially be arguing they themselves were ineffective. Well, they're not going to do that. They could. It's happened before. And it's certainly unusual, but they should have. And that's the plain fact of the matter is between February 2002 and July 2003 there was another delay. And whose fault is that? Is that the alien's fault? Is that his fault? It's somebody's fault. It needs to be explained. The facts need to be presented and blame needs to be allayed. Well, were they precluded, I guess, with the new attorney, which I guess is present counsel, when they filed the motion to reopen because of Mr. Salazar's failure to appeal, would they have been able to raise this additional basis of ineffective assistance or would it have been improper in that sort of motion to reopen? It certainly would have gone to the issue of prejudice. I mean, they're clearly raising it now as to affecting their ability to have presented their case. So it would have made sense and it certainly could have given the Board the opportunity to, say, exercise its sua sponte authority to reopen and even remand for proceedings on the asylum application. They could have done that, and that's the point of res judicata and collateral estoppel. We're not supposed to engage in piecemeal litigation. These things need to be handled properly and in the right place, and especially in an immigration agency context that the agency simply needs the opportunity, in the first instance, to address these kinds of questions as to whether they suffered any prejudice at all as a result of these goings on. I also wanted to touch briefly on the status argument. Petitioners have apparently abandoned that or at least didn't choose to raise that in their affirmative argument, that they were arguably still in status, and it's definitely a curious question. But, again, it's one that's completely unexhausted. Perhaps Salazar was ineffective for having mentioned it. Again, agency hasn't reached that. Even assuming that has any merit, they suffered no prejudice as a result of that because under the regulations which define duration of status, you must still continue to actually be in status. That's 8 CFR 214.2 F5I that defines duration of status, and you have to maintain status. She has this labor certification or authorization at this point. Now, does that put her into appropriate status? No, at least not in terms of filing for asylum. Her ability to seek adjustment of status and anything else like that is substantially hampered by the fact that they're both subject to a final order of removal. Despite having the labor certification? Again, that's not been properly presented. That was in the motion to reopen, but the board didn't reach it. Whether or not that has merit is a different story. But, again, they gave the aliens the opportunity to have their day in court, essentially, by reissuing this decision. They said that Salazar was ineffective for failing to petition for review, and that's it. That's all the board reached, and that's all that's before the court here. What about the merits of her claim for asylum? Well, the merits in terms of asylum, that's actually a curious question, because the board exclusively decided that they failed to demonstrate a timely application. So it denied asylum on statutory grounds, but also went through the past persecution, but only as to withholding of removal. If we got past the time bar. Sure, sure. The immigration judge did decide that their past harms did not rise to the level of past persecution. Again, this court has consistently said that past persecution is an extreme concept that requires more than mere harassment. And, yes, while they experienced some unfortunate events in Venezuela, they are not persecution. At least the immigration judge decided they're not. And substantial evidence requires that this court defer to them. Exactly what happened to them in Venezuela. Exactly what happened? They claimed that, well, petitioners, Sestari Cuenca, she assisted her mother with running for governor's position. They participated in some protests. They were discouraged from doing so. They were discouraged from presenting a radio program, I believe. She claimed to have been very briefly detained. This discouragement consisted of what? Death threats or simply? The threats weren't exactly. I don't believe they were death threats. But, again, this court has said that threats alone are not enough to constitute persecution because that unfairly shifts the burden of proof to the government to disprove a threat. And, again, under the totality of the facts as presented here and under the substantial evidence standard, the immigration judge concluded that it simply wasn't enough. Again, the board didn't reach that. So if the board, this requires the two-step analysis. It requires that the board erred in not reaching that as some kind of alternative ground, which it didn't need to do because it properly found that the application was untimely. Assuming it should have found that the application is timely and needs to address past persecution, that would have to be remanded. Remanded for them to? So that would be the most we could do here. But, again, that's not necessary given that the immigration judge found they didn't suffer past persecution and didn't suffer any prejudice. They also raised a social and disfavored group argument, a completely new claim that has never been presented before. That, too, is unexhausted. Just to make sure I'm not missing anything. If the court has any further questions? Thank you. Thank you, Your Honor. When you filed that petition to reopen or to reissue and you addressed somewhat Salazar's conduct, why didn't you go further? We did focus on the issue of his failure to appeal, to file a timely petition for review to this court. And one of the essential issues would have been whether or not petitioners had demonstrated extraordinary circumstances. This court has held that exhaustion has been satisfied when, for instance, in Amarjeet Singh v. Gonzalez 413 F. 3rd 156, a court can hear petitioner's Convention Against Torture claim even though it was raised only in a perfunctory manner. In Socop Gonzalez v. INS 272 F. 3rd 176, although petitioner never specifically invoked the phrase equitable tolling in his briefs to the BIA, he sufficiently raised the issue before the BIA. When the BIA addresses an issue, in this case extraordinary circumstances, it's deemed exhausted. Just to close. So in their decision on the merits of the asylum? Yes. That's what you're talking about. Yes. I want to emphasize that the board's decision is based on clear factual error. Petitioner was not merely yelled at on two occasions. She was harmed. She was arrested. She was detained. The radio program was stormed by the state police. Her family, the board held that the family remains unharmed in Venezuela. This is patently contradictory to the evidence that's in the record. But the BIA never really reached that because they found it untimely. They reached the issue of past persecution when they were addressing the issue of withholding because withholding. Not time barred. Right. Exactly. But there's a different standard for withholding as compared to asylum. Right. And in neither, I mean, in the board's decision, they nowhere addressed the issue of fear of future harm. So obviously not with respect to asylum because they said it was time barred. But with respect to withholding, they didn't reach the issue of future fear, which is legal error. Thank you. Okay. Thank you. That matter will be submitted. Thank you, counsel. We appreciate your arguments.
judges: Fletcher B. , Paez, Ikuta